

---

Deborah J. Israel, Counsel for the Receiver, Piper Marbury Rudnick & Wolf, Washington, DC, Judith Starr, Assistant Chief Litigation Counsel, Securities and Exchange Commission, Washington, DC, for plaintiff.

B. Michael Rauh, Manatt, Phelps & Phillips, Washington, DC, William R. Martin, Dyer, Ellis & Joseph, Washington, DC, Steve Gordon, Holland & Knight, Washington, DC, Michael Goldberg, Akerman Senterfitt & Edison, Fort Lauderdale, FL, for defendants.

## SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

## Paul A. BILZERIAN, et al., Defendants.

## Civil No. 89–1854(RCL).

United States District Court, District of Columbia.

May 30, 2001.

*ORDER*

STANLEY S. HARRIS, District Judge.

This matter is now before the undersigned on defendant Bilzerian's Motion for Recusal and plaintiff Securities and Ex-

change Commission's opposition thereto.[1] Defendant's motion is both meritless and moot. It warrants no more than summary denial, but the circumstances should be expressed for the record.

This case is approximately 12 years old. An Order of partial summary judgment and final judgment of permanent injunction was filed on April 8, 1991, following the affirmance of Bilzerian's criminal convictions in the Southern District of New York. *See United States v. Bilzerian*, 926 F.2d 1285 (2nd Cir.1991). From the affirmance of his convictions until January 12, 2001, on which date I ordered that Bilzerian be incarcerated for civil contempt, he steadfastly appeared *pro se*. Since then, multiple attorneys have appeared on his behalf (with others appearing on behalf of his wife, Terri Steffen, and the other intervenors in this case).

### My Retirement and the Handling of This Case

In mid–2000, I advised the Director of the Administrative Office of the United States Courts and the Chief Judge of this court of my intention to leave the court in early 2001. On September 30, 2000, my six years as Chairman of the Committee on Intercircuit Assignments of the Judicial Conference of the United States came to an end, enabling me to devote full time to my cases. I stopped taking new cases, and worked towards (1) concluding as many of my cases as possible, and (2) achieving the most efficient transfer of my remaining cases to other judges.

Since February 1996, I have been serving in senior status. Legally, that meant that I have been "retired," but pursuant to 28 U.S.C. § 371(b), which has enabled me to continue to exercise the powers of a United States District Judge. The next step is complete retirement under 28 U.S.C. § 371(a). Wishing to remain active in a constructive capacity following judicial retirement, I entered into an agreement with the nationwide organization JAMS to perform services as an arbitrator and a mediator on an independent contractor basis, exclusively through JAMS. (I was not, and will not be, "hired" by JAMS.)

Among my troublesome cases has been this one. There are two ways by which cases are transferred from one judge to another on this court. One is by having our Calendar Committee randomly reassign the case to a new judge; the other is by a transfer to a judge who consents to taking a particular case (the second type also requires action by the Calendar Committee, which is not appealable).

I worked diligently to minimize any possible disadvantage to all litigants which might result from ·my final retirement. Here, with Bilzerian incarcerated for civil contempt—and thus having the proverbial keys to his institution in his own hands—I recognized that no party's interests would be served by having this protracted and complex litigation suddenly transferred randomly to a new judge with no knowledge of the case. Rather, I concluded that the interests of all parties virtually necessitated my remaining active and available to handle the numerous issues that continued to arise. Judge Lamberth graciously agreed to succeed me in handling the case, so months ago I began to provide him and his staff with copies of all opinions and orders to make the ultimate transfer as seamless as possible. While JAMS and I had contemplated that I might begin post-judicial activities as early as March 1, 2001, in significant part because of the

---

1. Hereinafter, the undersigned shall use first person pronouns, since (1) many of the relevant facts are peculiarly matters of personal knowledge, (2) the motion is directed specifically to me, and (3) the case already has been reassigned to Judge Lamberth.

demands of this case (coupled with extraordinary demands on Judge Lamberth's time made by other cases of his), I repeatedly postponed my final retirement date. With the passage of time, I no longer had any law clerk (after February 19, 2001) or a secretary (after April 1, 2001). One of Judge Lamberth's law clerks began to provide sorely needed assistance to me on this case, with that clerk thereby becoming ever more knowledgeable about it.

No useful purpose would have been served by attempting to conceal my intentions. To the contrary, I had personal telephone conversations with the Receiver whom I had appointed (whom I had not known previously), with plaintiff's counsel, and with one of Bilzerian's lawyers, William R. Martin, whom I had known for nearly 20 years.[2] Assuring that this case, which had become highly active after Bilzerian's incarceration was ordered, would continue to receive timely attention was the principal factor in my repeatedly extending my final retirement date and, concomitantly, my availability to JAMS.

In the meantime, a veteran and highly respected Washington attorney, Howard Adler, Jr., left his law firm and joined JAMS. The economic and other benefits of a joint public announcement of Mr. Adler's and my becoming parts of JAMS's roster were obvious. I consulted with the Administrative Office of the U.S. Courts (and with a former Director of the Office of Government Ethics), and confirmed my belief that a mere announcement presented no ethical problem, as long as I did no work through JAMS until I fully retired

under Section 371(a). An April 17, 2001, announcement date was agreed upon, but I continued to work on this case (and several others) here at the court. Finally, by a letter to the Chief Justice of the United States (with copies to other appropriate officials) dated May 22, 2001, I took the ultimate step toward my complete judicial retirement, to become effective June 2, 2001. On May 23, I formally requested the Calendar Committee to reassign this case to Judge Lamberth by consent. It did so on May 25, one day after the subject Motion was filed, and the same day on which the SEC filed its opposition pleading.[3]

### The Bias Contention

Quite obviously, Bilzerian's counsel carefully avoid endorsing in any way their client's bald assertion of bias on my part against their client. The reason is obvious: there is no bias, as is clearly reflected by the recent record.

When incarceration for civil contempt began to appear inevitable, I met with the United States Marshal for the District of Columbia. When I advised him of what I thought I would have to do, he suggested having a hearing here and incarcerating Bilzerian in the District of Columbia Jail. Instead, I personally telephoned the General Counsel's Office of the Marshals Service and arranged to have Bilzerian report voluntarily to the Marshals Office in his hometown of Tampa, Florida. When he then obtained counsel for the first time since the affirmance of his criminal convictions, I held a hearing and—over the objections of the SEC—granted an extension

---

**2.** Obviously the merits of the underlying case never were discussed *ex parte*, but I firmly believed that the parties were entitled to know what to expect as to the future handling of the litigation.

**3.** It is unfortunate that Bilzerian's counsel are unaware that Article III judges in senior sta-

tus are "retired," which is part of what was conveyed in the JAMS announcement. Surely, however, counsel could not have believed that I unlawfully would have purported to exercise the powers of a United States District Judge.

of his reporting date. At a later hearing on April 5, 2001, I learned from Bilzerian's attorney, Mr. Martin, that Bilzerian was being held in the Federal Detention Center, rather than the Federal Prison Camp, in Miami, Florida. Convinced that that was unduly "hard time," promptly thereafter I personally telephoned the Director of the Bureau of Prisons to inquire into the matter. I then telephoned Mr. Martin (who was to visit Bilzerian the next day), to advise him of that fact. Pursuant to the BoP's suggestion, on April 12, 2001, I issued an Order stating that I did not view Bilzerian (the holder of an MBA from Harvard and the former head of multiple publicly traded companies) to be either a threat or a to pose a risk of fugitivity and recommending that he be transferred from the detention center to a prison camp.

Had I harbored any "bias" toward Bilzerian, the worst thing I could have done to him would have been to retire completely when I originally intended to do so and request a random reassignment of his case to a new judge with no knowledge of it at all. Such a reassignment would have assured that if Bilzerian were to decide in the meantime to purge himself of his civil contempt, his case would have languished for weeks (if not months) while the new judge and his/her staff sought to reach the point of being able to rule knowledgeably on newly presented pleadings.

Accordingly, for the reasons set for above, as well as for those explained in plaintiff's opposition pleading, it hereby is

ORDERED, that the May 24, 2001, Motion for Recusal is denied as being both without merit and moot.

SO ORDERED.

LAMBERTH, J., concurs.